UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**MILWAUKEE DEPUTY SHERIFFS ASSOCIATION,
MARK ZIDEK and ILIR SINO,**
       Plaintiffs,

     v.                                                     Case No. 06-C-602

**DAVID A. CLARKE JR., EDWARD BAILEY
and MILWAUKEE COUNTY,**
       Defendants.

---

## DECISION AND ORDER

Milwaukee County Sheriff's Deputies Mark Zidek and Ilir Sino and their union brought this § 1983 action against Sheriff David Clarke Jr., Sheriff's Captain Edward Bailey and Milwaukee County. I determined that defendants had violated plaintiffs' rights under the First Amendment's Establishment Clause and granted summary judgment to plaintiffs. Plaintiffs now ask me to enter judgment in their favor and award them attorneys fees.

### I. BACKGROUND

In their suit, plaintiffs contended that defendants invited an evangelical Christian organization, the Fellowship of Christian Centurions ("Centurions"), to make presentations at several meetings that deputies had to attend, including one at which defendants discussed promotion criteria. Plaintiffs further contended that defendants expressed support for the Centurions and permitted it to proselytize at the meetings. Plaintiffs asserted that defendants' violated the First Amendment by "endors[ing] one religion over another, one religious organization over another, one religious institution over another, and religion over non-religion," (Am. Compl. at ¶ 21), and by coercively "mak[ing] religion a

criteria for promotion and/or favorable conditions of employment." (Id. at ¶ 22.) In their complaint, plaintiffs asked for compensatory and punitive damages, injunctive and declaratory relief and attorneys fees and costs.

In my summary judgment decision, I found that defendants had invited the Centurions to speak at meetings that deputies had to attend and permitted the Centurions to proselytize and had thereby promoted the Centurions' message. Based on the discussion at one of the meetings involving promotion, I found that a deputy could have reasonably inferred that he would receive more favorable treatment by manifesting receptiveness to the Centurions' message. Thus, I concluded that defendants had violated the Establishment Clause, which "'mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" Vision Church v. Vill. of Long Grove, 468 F.3d 975, 992 (7th Cir. 2006) (quoting McCreary Co. v. Am. Civil Liberties Union, 545 U.S. 844, 860 (2005)). However, I found that defendants had not required deputies to embrace Christianity to be promoted and, therefore, had not violated the First Amendment's Free Exercise Clause.

## II. DISCUSSION

After deciding the summary judgment motions, I did not enter judgment because plaintiffs had not made clear whether they would attempt to prove compensable injury. Plaintiffs have since indicated that they seek only declaratory judgment and nominal damages. Declaratory judgment would be inappropriate because my summary judgment decision did not find that defendants' violation was ongoing, the record indicates that defendants have not invited the Centurions to speak to employees in over a year and

plaintiffs have not argued that they are likely to do so in the immediate future.  See Powell v. McCormack, 395 U.S. 486, 518 (1969); Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006); Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir. 1986); 28 U.S.C. § 2201. However, my decision found a past violation and thus I must grant each plaintiff nominal damages of one dollar.  See Carey v. Piphus, 435 U.S. 247, 266-67 (1978).  I will order that judgement be entered in this amount.

With respect to fees, I may award reasonable attorney fees to a prevailing party in a § 1983 action.  42 U.S.C. § 1988.  A prevailing party is one who receives "some relief on the merits of his claim," including an award of nominal damages.  Farrar v. Hobby, 506 U.S. 103, 111, 113 (1992).  Thus, it is clear that the present plaintiffs are prevailing parties. However, if nominal damages represent only a de minimis victory, I should deny fees without examining the usual fee-shifting factors.  Id. at 115.  Nominal damages awards are not always de minimis.  I must examine "the difference between the judgment recovered and the recovery sought, the significance of the legal issue on which the plaintiff prevailed and, finally, the public purpose served by the litigation."  Cartwright v. Stamper, 7 F.3d 106, 109 (7th Cir. 1993) (citing Farrar, 506 U.S. at 120-22 (O'Connor, J., concurring)).

In the present case, plaintiffs' award is more than de minimis.  Although plaintiffs obtained only nominal damages, "damages were never a serious part of this lawsuit." Johnson v. Lafayette Fire Fighters Ass'n Local 472, 51 F.3d 726, 731 (7th Cir. 1995).  In this respect, the action likely typifies Establishment Clause cases inasmuch as government promotion of religion does not usually cause compensable injury even while it erodes our religious freedoms.  Plaintiffs asked for unspecified damages in their complaint but after prevailing on summary judgment, forwent a damages trial.  Further, plaintiffs prevailed on

a significant issue. Contrary to defendants' assertion that plaintiffs' Free Exercise claim was the "centerpiece" of plaintiffs' case, if anything, plaintiffs focused on the Establishment Clause. In any event, regardless of which claim plaintiffs prevailed on, the result would have been the same – a First Amendment violation without actual injuries. Finally, by vindicating a fundamental right and clarifying that public employees could avail themselves of it, plaintiffs' action served an important public purpose. See Lynch v. Donnelly, 465 U.S. 668, 694 (1983) (O'Connor, J., concurring); Bats v. Cobb County, 495 F. Supp. 2d 1311, 1319 (N.D. Ga. 2007). In fact, this action served little private purpose, given that plaintiffs no doubt knew that they would not recover significant damages.

Thus, plaintiffs are entitled to a fee award. To calculate the amount of the award, I first determine a presumptively reasonable fee, i.e. the "lodestar," by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). I exclude hours that are "excessive, redundant, or otherwise unnecessary," Batt v. Micro Warehouse, Inc., 241 F.3d 891, 894 (7th Cir. 2001), and require plaintiffs to provide documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty" that the hours claimed were actually and reasonably expended. Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004). After determining the lodestar, I may adjust it based on several factors, the most important of which is the degree of success obtained. Hensley, 461 U.S. at 436.

Plaintiffs seek fees for 204.70 hours. Defendants make several arguments as to why I should reduce this number. First, they contend that plaintiffs' attorneys provide insufficiently detailed records because they use a "block billing" format and list "research" several times without identifying the subject of the research. The term block billing refers

to a single time entry that lists multiple tasks.[1] It "is not a prohibited practice," <u>Farfaras v. Citizens Bank & Trust</u>, 433 F.3d 558, 569 (7th Cir. 2006), as long as a court can determine whether the listed expenditure of time was reasonable. <u>Top Tobacco, L.P. v. N. Atl. Operating Co.</u>, Case No. 06-C-950, 2007 U.S. Dist. LEXIS 66614, *13-14 (N.D. Ill. Sept. 6, 2007). In the present case, the block billing entries list only a few tasks and enable me to determine whether the time expended was reasonable. Further, most of the entries listing research "are not impermissibly vague when viewed in the context of the surrounding documentation." <u>Berberena v. Coler</u>, 753 F.2d 629, 634 (7th Cir. 1985). For instance, on May 14, 2007, attorney Rachel Pings conducted research and drafted a summary judgment brief. Clearly, Pings was researching law relevant to the brief, and the time listed is reasonable. However, one entry, dated December 26, 2006, lacks sufficient context. It states that attorney Jonathan Cermele spent 4.50 hours on research but does not enable me to ascertain the nature of the research and therefore to determine whether the time spent was reasonable. Thus, I will reduce Cermele's hours by 4.50 hours.[2]

Defendants also argue that Pings performed some tasks that she could have delegated to employees with lower billing rates. Regarding most of these tasks, Pings would not have saved anyone money by delegating them. For example, she printed materials, added dates to her calendar and scanned and e-filed documents. Delegating

---

[1] For example, the May 12, 2006 entry states that attorney Jonathan Cermele spent 1.70 hours on the following: "Telephone call from Pings; meeting with Felber (the head of the plaintiff union); review documents from Felber." (Cermele Aff. Ex. A at 1.)

[2] Cermele listed two tasks in the same entry. Because of the block billing format, I must reduce his hours by the entire block of time. <u>See</u> <u>Berthold Types, Ltd. v. Adobe Sys.</u>, 186 F. Supp. 2d 834, 842 (N.D. Ill. 2002).

-5-

these tasks would have taken as much time as performing them. Although Pings spent somewhat more time scheduling depositions, most of it involved communicating with opposing counsel. Because both sides' attorneys used their time in this way, I consider it reasonable. I will disallow three of Pings's time entries. On May 23, 2006, she billed 2.10 hours for such tasks as traveling to opposing counsel's office to obtain a signature and delivering pleadings to my chambers; on July 6, 2006, she billed 0.40 hours for downloading records and determining witness fees and mileage; and on July 7, 2006, she billed 2.40 hours for, among other things, traveling to opposing counsel's office to obtain a signature and delivering documents to my chambers. Pings should have delegated these tasks, thus, I will reduce her hours by 4.90 hours.

Finally, defendants complain that plaintiffs' attorneys inappropriately included time spent reviewing one another's work. I will reject this argument because the total time that counsel spent drafting and reviewing briefs was reasonable, and plaintiffs were no doubt benefitted by having two sets of eyes look at their filings.

Thus, I find that Cermele reasonably spent 67.10 hours on this litigation, Pings reasonably spent 116.90 hours and attorney Matthew Granitz reasonably spent 11.30 hours.

Plaintiffs seek fees at an hourly rate of $250 for Cermele and Pings and $175 for Granitz. The reasonableness of an attorney's billing rate depends on the market in which the attorney operates. The best evidence of an attorney's market rate is his actual rate. People Who Care v. Rockford Bd. of Edu., 90 F.3d 1307, 1310 (7th Cir. 1996). When an attorney mostly bills by the hour, his hourly rate is presumptively reasonable. Id. But for an attorney who does not mainly bill by the hour, his hourly rate is less helpful in divining

his market rate. Id. Thus, an attorney who depends primarily on contingency fees or court-ordered fee awards must produce evidence of other lawyers' rates and/or fee awards for similarly experienced attorneys in similar cases to establish his market rate. Id.; Spegon v. The Catholic Bishop of Chi., 175 F.3d 544, 566 (7th Cir. 1999).

In an affidavit, Cermele states that he "regularly charge[s] and receive[s] $250.00 per hour for work performed by [him]self and Attorney Pings to represent law enforcement officers in constitutional litigation." (Cermele Aff. at 5.) He further states that he "billed the modest amount of work performed by Attorney Granitz at only $175.00 per hour (to reflect the relative difference in his time and experience as an Attorney.)" (Id.) However, Carmele does not indicate how much of their time the attorneys bill at these rates, thus I cannot ascertain whether these are "standard" hourly rates and must look at plaintiffs' additional evidence. Plaintiffs submit an affidavit from William Rettko, a Milwaukee-area civil rights lawyer, stating that this court awarded him fees under § 1988 at a $175 hourly rate in 2000, Gustafson v. Jones, 94-C-1392, and at rates of $200 and $250 more recently, Morales v. Jones, 00-C-618, and Alexander v. Jones, 06-C-311. Rettko further states that this court has awarded other area civil rights attorneys fees at hourly rates of $350 and $400 per hour. Plaintiffs also cite In the Matter of Attorney Fees re: Crawford Co. v. Masel, 238 Wis. 2d 380, 391 (Ct. App. 2000), which cites to evidence that, in 2000, the billing rate in Wisconsin for an experienced civil rights attorney with a good reputation averaged between $200 and $295 per hour.

Plaintiffs' evidence establishes that for cases like the present one, Cermele's market rate is $250 per hour. Cermele is an experienced civil rights litigator. Defendants do not seriously challenge his rate but speculate that he may charge the union a lower rate

because it is a regular client. However, my focus is on Cermele's market rate, which does not depend on the amount plaintiffs owe him, Johnson, 51 F.3d at 732, or on "atypical billing arrangements with certain clients," People Who Care, 90 F.3d at 1312. However, plaintiffs' evidence does not establish Pings's market rate at $250 because Pings is less experienced than the attorneys described in Rettko's affidavit and in Masel. Cermele states in his affidavit that Milwaukee County has compensated Pings at a rate of $250 but provides no details, and defendants dispute his assertion. Thus, I will reduce Pings's hourly rate to $200 to reflect her lesser experience. Defendants do not challenge Granitz's $175 hourly rate.

Thus, the lodestar includes: Cermele, 67.10 hours at a rate of $250 per hour; Pings, 116.90 hours at a rate of $200 per hour; and Granitz, 11.30 hours at a rate of $175 per hour. After adding costs in the amount of $3,382.10, which defendants do not challenge, the presumptively reasonable award is $45,514.60.

Defendants ask me to reduce the lodestar based on plaintiffs' failure to prevail on their Free Exercise claim. In determining whether to adjust the lodestar, I consider whether plaintiffs' successful and unsuccessful claims were related, i.e., whether they arose out of a common core of facts or were based on related legal theories, and consider the level of plaintiffs' success. Hensley, 461 U.S. at 434. Plaintiffs' failure to prevail on their Free Exercise claim warrants only a slight reduction. Such claim was related to plaintiffs' successful Establishment Clause claim both legally and factually. Further, as stated, the claim was not the centerpiece of plaintiffs' case, and their lack of success with it did not affect their ultimate recovery. Defendants also ask me to reduce the lodestar based on the limited relief obtained. I agree that the limited relief warrants a reduction. Plaintiffs'

complaint asked for a preliminary injunction, compensatory and punitive damages and declaratory relief, but plaintiffs obtained only nominal damages. And plaintiffs' attorneys spent some time seeking injunctive relief before abandoning such effort. However, I will not dramatically reduce plaintiffs' fee award. Plaintiffs obtained an important legal decision that clarifies the law regarding public officials' promotion of religion to their employees and promises to prevent future deprivations of public employees' religious liberties. Were it not for people like plaintiffs, willing to invest time in a lawsuit that challenges unconstitutional action but promises no personal rewards, the First Amendment would be less effective. I will reduce the lodestar by fifteen percent, or $6,827.19.

Thus, plaintiffs are entitled to recover from defendants $38,687.41 for fees and costs.

**Therefore,**

**IT IS ORDERED** that plaintiff's motion for attorney fees and costs is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiffs are entitled to $38,687.41 in attorneys fees and costs.

**IT IS FURTHER ORDERED** that judgment be entered awarding each plaintiff one dollar ($1) in damages, and awarding plaintiffs $38,687.41 for attorney fees and costs.

Dated at Milwaukee, Wisconsin this 5 day of February, 2008.

/s_____
LYNN ADELMAN
District Judge